It's a pleasure to be here. I'm Russell Walker, representing the appellants, Kona Enterprises, and the plaintiffs originally, and third-party defendants, Wayne Rogers, and others. Briefly, I understand our time is short and would be happy to answer any questions that the panel has during my argument. That's probably the best time spent. Otherwise, our primary... Yes? I was just going to say, Mr. Walker, please don't feel like you need to make an extended argument. I think we've all read the prior appeals. There's been voluminous briefing. We're pretty familiar with the history of this case. Sure, and I don't want to get into the history other than to say that the concern... Well, actually, I'd like to reserve a few moments for rebuttal, but what I would like to say is... Here's question number one. What exactly is before us now? Which fee awards are before us? When the matter came before the Ninth Circuit, there was the TSA v. Shimizu case that was decided by the Hawaii Supreme Court. Right, and there was a remand, and there was an order in 2003, and there was another order in 2004. Just a minute, please. Yes. And there were no appeals from either of those orders, right? So aren't they just by the boards? Well, no. I think the major issue is here that those entities, Mr. Rogers was found to not be liable for those attorneys' fees, and Mr. Gertino, who was another defendant, but Kona Enterprises was. However, Kona Enterprises had no assets, and neither did the other two defendants. But are the merits of the 2003 and 2004 orders still open, or only the question of whether your client is liable for them? Only the question for attorneys' fees. So you're not discussing them? No, we're not. The whole question of is this a subsider, is it a subsider? This is a subsider. A subsider is the sole issue before Your Honors. That is before us? Yes. Well, that is the matter. Well, the subset claim. I'm confused. No, it was remanded to have the court determine... Okay, and it was determined in an order in 2003, which was never appealed. Right, but the third-party complaint then was filed because there was no source of recovery from the existing defendants. But your client was the principal in the corporation that was, in fact, found liable, no? Well, no. In fact, the evidence... Or down the line. I guess the question is, was he in privity sufficiently that he's bound by that result? No, I don't believe so. So he's now appealing the merits. It was not a final order. It was not a final ruling because of the parties that they were seeking the attorneys' fees against. They sought attorneys' fees against TAC I and balanced value, and they were assetless. So they filed the third-party complaint. But he was a partner, was he not? Pardon me? He's a partner in those entities, and he's liable. Sure he is, but it was not a final order. But if they didn't appeal and the time ran out, it's a final order as to those entities. No, absolutely not, because they're seeking attorneys' fees from Mr. Rogers again in this context. I understand that, but the question is, what is the impact? But there was a final order in 2003 with respect to fees, because fees are special, against the parties who were named at that time. That much is true. That's right, TAC I and balanced value. They couldn't file an appeal now. Well, I think what happened is the law discourages piecemeal litigation, and they filed a third-party complaint against the general partners of TAC I and balanced value, which brought Mr. Rogers back in again in his capacity as general partner at the time. But at the time the complaint was pursued, Mr. Rogers was no longer the general partner. It was Wayne Rogers and Company that was the general partner. But they didn't properly perfect that change under California Corporation. Well, what they did is they gave notice of termination. So as a matter of public record, it wasn't canceled, but there was a termination notice that wasn't filed. And the California case law says that you have to do a cancellation. Do you not? No, I don't believe so. I think the question is really notice and who is the proper party. You can't seriously pretend that your client didn't know. But Mr. Rogers was the ruling of the Ninth Circuit previously terminated Mr. Rogers' liability. He was found to not be liable. So then they brought an action against him again. He was found not to be liable. For the attorney's fees. On his own hope. At all. But he's still a partner. Yeah, he is a partner, but it wasn't until they filed the third party complaint against him that then he became at risk again. And we appealed. That's where you're losing me. Because he's been a partner in this thing all along. If you assume that my reading of the California law is correct, that he didn't lawfully terminate his partnership status until after the debt had been incurred by his former partnership. And the former partnership is now without sufficient assets. As a partner, he's liable for the debts of the partnership. Well, I disagree because I think at the time liability was determined in 2005. Suppose we disagree with your argument that the liability was established before then. You would agree as a matter of partnership law that a partner is liable for the debts of the partnership. Yes, but at the time that the liability was determined. I understand your argument. I just want to make sure that we're clear on the principles of basic partnership. Yes, no, I understand that. But that issue was not, again, there would have been a separate appeal and there would have been another appeal and the ruling was not final. That's the part I'm not understanding. And I'm just not clear on what your argument is. Is your argument that it wasn't final with respect to the entities that were named? Who owes it and in what amounts? I'm sorry? Who owes the fees and in what amounts? They're not really speaking against Kona Enterprises necessarily because Kona doesn't have any assets. Well, Kona Enterprises was the defendant. I'm sorry, Your Honor. Yes. Kona Enterprises was the defendant against whom the attorney's fees order ran. Well, it was the plaintiff in the initial action. I understand, but it was the party against whom the attorney's fees orders of 2003 and 2004 ran.  Yes. Kona Enterprises could have filed an appeal. No. We didn't believe it was a final order because we knew they were pursuing the third party defendants to get them to pay the fees. They're the entities that have assets, arguably. But your argument basically is it doesn't count unless the entity has assets. No, no. It's a liability question. Right. And the question is when does the liability attach? That's the legal issue. That is the legal issue. That's when the liability attached in 2005 when the summary judgment was granted against those third party defendants. That's when the liability for the attorney's fees attached. And they had the right, those third party defendants had the right to challenge this on its merits. And it's clear to me, if you look at the complaint that was pled in this matter, there are four claims for relief and, in essence, two other claims that are essentially damages. All right. Well, why don't you go on to the merits of the attorney's fees for now? Right. Well, the point is that it was a breach of fiduciary duty because of the, and if you look at the prayer for relief as a direct and proximate result of the bishop of state's actions, breaches of fiduciary duties owed to plaintiffs. The company suffered damages. But the damages that you sought was the return of the investment. Well, it all, yes, that's correct. And, in fact, Your Honors, in the. . . And you took the position earlier in the litigation that this was a contract claim in order to avoid. . . Well, and so, not technically. There's a subtle distinction there. The statute of limitations under Hawaii law allows for liability of individuals under contract and other liability. Our belief was that the breach of fiduciary duty was under that other statute. But they also argued the opposite. They said it was a tort back then when it met their needs, and now they're claiming that it was a contract. But I believe that the liability for these parties, the third-party defendants, that was set in 2005, was. . . It was not a final ruling previously for their liability. They had every right to challenge the attorney. Well, let's assume that for now. Let's go to the merits of the question of whether each of these causes of action was. . . Yes. Or not. Right. And the issue is, essentially, Judge Ezra found that the. . . He agreed with Magistrate Curran, who found that, in essence, the central issue was that the Bishop Estate promised and failed to obtain financing. That was his interpretation of the contract or of the complaint. In fact, that was not the case at all. The major wrong that occurred in this case is that the Bishop Estate secretly obtained the loans from lenders and then turned around with a six-day notice foreclosed on the stock of their fellow shareholders, fellow partners, fellow officers and directors. That wrong in the case that we cited that I think is the most helpful to the Court, in addition to the TSA case, is the case of BTI v. Equitable Life, which is a California. . . At a minimum, it seems to me, you have to agree that it was at least. . . At best, from your point of view, it was both. It was at least partly a cause of action for breach of that agreement. Well, no. This runs through there. I mean, you erased the breach of that agreement several different times. Breach of fiduciary duty. That's right. But those facts that they could have and would have obtained financing. . . There's no question they could have obtained financing. In fact, they bought the bank. . . And you allege the breach of that agreement as part of. . . Not as a claim. Not as a claim. We allege breach of fiduciary duty, which under the BTI case. . . Well, for example, under the first claim of relief. . . Yes. On page 36. . . We allege that was evidence of a breach of fiduciary duty, that they failed to obtain financing. But the real breach occurred. . . If they didn't obtain financing, the argument has to be that this was a. . . But you didn't say they failed to obtain financing. You said they breached the agreement to obtain financing. Right. But we didn't. . . We could have easily said breach of contract as the claim. We didn't. Because if that were the issue, we could have gone out and obtained financing. And for example, the next cause of action, which is breach of the Component of Good Faith and Fair Dealing. . . That is a contract cause of action because the Component of Good Faith and Fair Dealing. . . Well, no, it isn't. Well, the Component of Good Faith and Fair Dealing is a implied contract. That's correct. But I would direct Your Honors to the case of May v. Watt, which is a 1986 Ninth Circuit decision, found at 822 Fed 2nd at 896, that if there is a special relationship, which is exactly what we alleged in this case, fiduciary duties, it may be a tort claim. Fiduciary duties by limited partners? Yes. No, fiduciary duties by controlling limited partners. Fiduciary duties by parties who then became lender and foreclosed. And like I said, the BTI case essentially held that there's a highest duty of good faith, that you can't obtain any advantage as a fellow shareholder over another party in any way. And it basically says to, number one, acquire. . . This is a California Court of Appeals case, obviously. But to acquire a loan against the partnership is a breach of fiduciary duty, and that you cannot, secondly, foreclose that loan. Essentially, that BTI case, I think, is right on point, that it shows that a general partner who cannot foreclose on that, which is exactly what they did in this case. The breach of fiduciary or the covenant of good faith and fair dealing does imply a contract, but once again, because of the relationship, which duty arises by operation of law? The TSA case is very similar to the case before the Court, that the breach of fiduciary duty claim sounds in tort, where the duties allegedly breached arises a matter of law from the fiduciary relationship. Right. Then on page 40, you say, as a direct and proximate result of the Bishop Estates breaches of the covenant of good faith and fair dealing arising from the agreements and their relationships. Correct. So it seems to me that you are alleging, at least you are alleging both. Well, we weren't because what is the contract we are referring to here? Was it a contract? Was it a loan commitment contract? Was it a management contract? No, it wasn't. The only contract was that they continued to extend credit and work together for the benefit of the parties of the highest degree of loyalty and good faith, fair dealing. That's what a partner… I thought the promise alleged was that we will get alternative financing. No, well, that was one of the facts, but that's clearly an example of fiduciary duty where you owe the highest duty to your partners. You can't use that to any advantage. Well, let's assume for the moment that my premise is correct because I believe it probably is, i.e., that at a minimum there are some causes of action here that would be in some sense, whatever might be the true of others. So then you have a divisibility problem. And the actual, as I understand it, the actual litigation here which led to the fees never really got anywhere close to the merits of anything. No, it didn't. It was a motion to dismiss. Therefore, it would have been the same no matter what was in this complaint. Well, unless there were six claims for relief, two of which punitive damages is clearly a remedy, and under Hawaii law and under Ninth Circuit law, punitive damages can be pled in the case of a breach of fiduciary duty. Right, but that doesn't have anything. I mean, if you're looking at it in terms of if you want to divide up the fees that were actually incurred, the punitive damages has nothing to do with it, and the constructive trust has nothing to do with it, and in fact the litigation was over diversity and over whether it was a derivative action and so on. None of it would have been any different if the, assuming that I'm right, that some of this is for breach of contract or closely related there, too, even if there were also other stuff, as you were claiming, that isn't for it. It wouldn't have made a difference. Well, the thing, well, I think it would. Why? I mean, the reality is you have to look at the complaint and what was the relief you were seeking. If it's all on a procedural basis. I'm asking you to listen to the question. Well, I'm sorry. Okay. The question is this. As to the fees actually incurred, which are the subject of these orders, what fees would be different, less? What could you, or divisible, if, as I'm suggesting, at least some of this complaint is, it sounds to me, a subset. I think a fraction. I think you've got to look at the entire complaint and you say what portion of that is it practicable to allocate regarding the claims. If it's all over procedural, I think you've got to treat that entire complaint as an equal share. Why? That's not dividing it. I mean, if you would have incurred exactly the same fees anyway, then there's nothing to divide. Well, I believe that that's unfair to say that all of the claim then was a subset. Well, the district court said that you never offered any analytical manner in which it could apportion the fees. Well, because of the very reason Judge Berzon pointed out. Well, that it was always at a procedural level. I mean, the fact of the matter is, if you look at our claims in our complaint, there were six claims there. Why not allocate, as Your Honor said, one portion of one of those claims and then divide it by? I'm suggesting the opposite, actually. What I'm suggesting is that if all the fees would have been incurred on the piece of the complaint that is a subset, it doesn't matter whether there's other stuff in there also. Well, again, there really wasn't a subset. To say breach of contract, easy to say. Claim number one, breach of contract. We didn't say that. It really essentially went to the relationship between the parties and the duty that arose by operation of law. We're now trying to bring in a third party that's bound by the, I mean, the third party complaint didn't establish liability until that point in time. It didn't establish that these parties were liable for the fees until that point in time. Unless we rule that the fee liability attached to the partnership earlier than you want us to declare that.  I think there was some implication that maybe there was some impropriety that they changed that partnership, but there is no evidence in the record. In fact, that isn't the case. Do you want to save some time? Yes, I did. Thank you. Morning, Your Honor. Kelly Laporte on behalf of the Kamehameha Schools. I guess just to put this case in perspective, this case defines my career as an attorney because it was filed one day before I was admitted to practice. I am carrying a copy of Bleak House from Ironwood. And that was in November of 1994. So here we are 13 years later, and the merits were decided four years into the case. For the last nine years, we've been litigating attorney's fees. It is fairly mysterious why you people couldn't go use our mediators and sell this case. I will put on the record we have made many offers of compromise. None were accepted. But what's mind-boggling is that it didn't even just start in this jurisdiction. First, it started in 1992 in North Carolina. Two complaints against Kamehameha Schools. Then they moved to Utah. Another complaint, an amended complaint against Kamehameha Schools, dismissed for lack of jurisdiction. Then they arrived on this shore. Well, it was a total of nine complaints. And so we're looking at the ninth complaint. And they did not succeed on a single claim in any jurisdiction and caused Kamehameha Schools to incur well over a million dollars. But let me ask you something. In terms of – I mean, there are two ways to go at this case in the merits. And after that, we can discuss about the non-merits, about what's really before us. But in terms of the merits, one is to go claim by claim and say this is an assumption and this isn't an assumption. And the other one is to approach it the way I was approaching it before, that at least some of it is an assumption and that no suggestion – because all the litigation has been purely procedural and hasn't gone anywhere near the merits, the actual fees couldn't be divided in any sensible way and just leave it at that. Is there any reason not to do it the second way? No, Your Honor. In fact, that is the standard. The standard is not, as an appellant would suggest, just count the number of claims and make a fraction. It's no case law to that effect. The standard is take a look at the claims, analyze them. Is it practicable to distinguish the claims claim by claim based on the 396 pages of attorney's fees invoices we submitted? And Magistrate Curran and Judge Ezra looked at that and in looking at the case law in Hawaii about the impracticability of discerning claims, you cannot. Didn't they also – I'm sorry to interrupt you – but didn't they also proceed to try to demonstrate that each cause of action was an assumption? That's it. And that, I think, is somewhat less successful because it appears to me that – to me, the fact that at least some of the causes of action seem to be centrally concerned with the foreclosure and not with the breach. The breach becomes a background fact and the foreclosure complaints seem to be relational and premised in a common law or other fiduciary duty claim. Now, they could be totally wrong because I don't know where the – the fiduciary duties may not make any sense, but they don't seem to be contract-based. Some of them, and some of them do. Is there any reason for us to worry our heads about that is what I'm asking you. I don't think so, Your Honor, and the reason it comes down to how they initially pled their complaint, their ninth complaint, again. And you have to ask yourself, okay, they're making a claim for breach of fiduciary duty. It can't be as a controlling shareholder because Kamehameha Schools was not a majority shareholder of Kona Enterprises. If it was, it wouldn't be suing itself for the last 15 years. It was not a majority or a controlling shareholder of Kamehameha Schools. So, as a matter of operational law, no fiduciary duties spawned from that relationship. As a limited partner in two shareholders of Kona Enterprises, it had no fiduciary duties as a matter of law. So the only way you get to arguably a fiduciary duty is from what? The extension agreement and the promise that Takabuki made supposedly to don't get alternative finance, I'll do it. But don't we look at the – I mean, he seems to have another theory. I mean, and you may be right. As a matter of law, you probably are, as far as I can tell. But I guess when you're looking at a complaint, even if something – assertion in the complaint is just totally wrong. If somebody wrote a complaint and said, I assert that there is a fiduciary duty that runs from limited partners to me and that this was breached, and it was perfectly clear about that being the allegation, I assume that doesn't sound an assumption, even though it gets thrown out on day one. It would if it was plain in the complaint, as it is here, is that that duty arose because of a breach of the extension agreement. And we've got more facts than just the complaint. And if you look at the supplemental expert record at 35 to 38, here's how Plaintiff's Counsel defined how – precisely how their breach of duty arose. First, plaintiff's claim involves the breach of a duty spawned by implied agreements between the parties. Second, plaintiff's claims in this case arise in part from the express agreements of the parties. Like the lawyer's representation in the case of Higa, KS expressly agreed in written contracts that it would work together with its fellow shareholders and partners to find a permanent solution. And it goes on and on, defining how precisely the breach of duty was spawned by implied contracts and by express contracts. In the law regarding whether – how you go about determining whether or not it's the case of the nature of a sumsit, well-established Hawaii case law, you look at how plaintiffs describe their own claims. And there could not be a more explicit explanation, a definition of precisely how their fiduciary duties – and they went through this litany of how every one of their claims was spawned and arose out of implied and expressed agreements. So here we have plaintiffs defining, clarifying even more. The context of that. The context of that was in response to a statute of limitations argument. And they were arguing the two-year statute of limitations for entry to property in person doesn't apply. We could do the same with your pleadings at that time. Well, no, I'm glad you mentioned that because we did. We did. And it wasn't in the context of whether or not the case is in the nature of a sumsit. And it's apples and oranges, Your Honor, because you can have a classic, a classic tort claim. You can have fraud. I've got a Van Gogh painting, and I'll sell it to you for $5 million. That's my fraudulent representation to you. You buy it. You realize it's a fake. You sue me for fraud. But it's in the nature of a sumsit. And Hawaii's construction litigation claims, they're barred by a two-year statute of limitations for entry to personal property. But they're almost all the claims you recover because they're in the nature of a sumsit. The Hawaii lawyer should have taken civil procedure at Harvard in the 60s when they taught the old forms of pleading. But anyhow, and the other thing we did, too, is if you look at what we argued in our statute of limitations, we simply took the titles, the four or five titles of their various claims, and said and analyzed from various case law around the country because Hawaii had nothing on point, and said, well, we think the two-year statute of limitations apply. And the analysis was not whether or not these claims are in the nature of a sumsit. So thanks for the red herring, but what is very pertinent is how they defined their claims to determine that they're in the nature of a sumsit. But I don't even think these men get there, Your Honor. Can we back up for a minute? Can we back up, as I said we would, to the question of which orders are now before us? Are the merits really before us now? The merits in terms of the attorney's fees are absolutely not before us, Your Honor. They were entered years before, years before third-party plaintiffs appealed. And the standard is 30 days from entry of an attorney's fee award that's post-judgment. It's undeniable that these, both the fee award and the supplemental fee award, were post-judgment fee awards. Plenty of case law that they are final when filed. The fact that there were supplementary proceedings to collect, essentially a collection action going on, does not allow us to unravel the finality of the attorney's fee provision. They cite no case law whatsoever for that proposition. And I think Judge Tallman asked the question, what, you know, could Kona, could Kona challenge the underlying premise of the attorney's fees? Kona Enterprises wasn't a third-party defendant. I could bring an action, a supplementary proceeding in Utah tomorrow, and try and go after Wayne Rogers as the principal of Kona, who's been litigating this case, or directing litigation for 15 years, and seek to hold him liable, just as we're trying to seek the principles of balance value fund and TAC 1 against a final judgment that's been entered on their behalf in trying to hold them personally liable. Kona in Utah tomorrow can't say, oh wait, let me go challenge the premise of the fee awards that were entered years ago. No. If Kona wanted to, or Wayne Rogers as the principal of Kona, wanted to challenge the basis of that fee award, he had 30 days, just as balance value and TAC 1 had 30 days. So this is a supplementary separate collection action that can in no manner seek to alter the basis of these final judgments. They were final and entered. The liability was established. The precise amount of balance value and TAC 1 was established to the penny. Now, if balance value or TAC 1 paid the judgment, we wouldn't be here. We wouldn't have had supplementary proceedings. It's only after they refused to pay for their cost, which were never remanded to Judge Ezra, did we say, gosh, you know, we better not waste any time because we're afraid something, you know. But I guess the nice question is this. It certainly seems to me that you're correct that there was an appealable order and that Kona could have appealed it. But the question is whether now that you've gone after someone else, if it is someone else, for the same amount of money, do they get to litigate at all because they get to have their day in court on the question of the merits? Exactly, Your Honor. And the answer to that is absolutely not. They were principled for whatever manner they may be held liable for the entity that a final judgment has been rendered against, they're stuck with it. And if I can direct your attention to the supplemental expert of record at 70, we explained this when we moved to implead these additional parties. And we cited the 14th RMA Partners Limited Partnership versus Real 100 F3rd 278. It's a Second Circuit 1996 decision. If there is a subsequent suit to hold the general partner liable for the judgment against the partnership, it is only for the purpose of affording the partner the opportunity to contest the limited issue of whether or not the defendant is, in fact, the general partner of the partnership. And it's really because essentially the privity issues collapse the matter into what? Because if he is liable, then it's because he was essentially in privity. I believe that's the policy for it. That's it. If someone sues my law firm, we're all on the hook. If we get a judgment against my law firm, we all have to pay it if the partnership doesn't pay it. The final judgment has been rendered. We can't, and they come after me three years down the road. I can't unravel that. I mean, how far do I unravel it? Do I go just to the attorney's fees? Why don't I get a chance to go to the basic lawsuit? Why don't we go back to whether or not Kamehameha Schools was a prevailing party, which was determined in 1998 and affirmed by this court in 1999? It's a final judgment, and the fee awards resulting from that final judgment are final orders. You have 30 days to appeal from them. So if you want a protection, you should have organized as a limited liability corporation or something. And, Your Honor, that's exactly what they try to do, and it's kind of interesting. Well, yeah, in the middle of a collection action or an anticipation. Only after they've lost in court, only after we've got pending motions for attorney's fees, and 16 days after we file a complaint to hold them individually liable. Oh, gosh, now's a good time to form a corporation. You don't need to stay and argue if you think you're finished. Thank you, Your Honor. Thank you for asking. I think Your Honor is correct that the fact of the matter is the third-party defendants did not have their day in court, and that the law discourages piecemeal litigation. It should give these parties an opportunity to appear and defend in the case. I will say, with respect to Judge Tallman's comment with respect to the limited liability company, the fact of the matter is there was a merger. The LLC was not, and there's no evidence in the record, in fact, that was not the case, that there was an attempt to avoid payment of this debt. But, in fact, the law requires after a merger that the merged entity is liable, but they chose not to name them as a party. I'm not suggesting, by my question, we don't have a finding by the district court here of alter egos. No, but no collapsing of entities, and I don't believe you can do that. Or actions that amount to fraud on judgment creditors. But we're still back to the question I asked you before, and that is, assuming that there has not been compliance with California corporations law, and assuming that, or partnership law, and assuming that the judgments were binding at the earlier, or final at the earlier date from which no appeal was taken, then we're back to partnership law that says the general partner is liable for the debts of the partnership. Well, yes. If the entity doesn't have the assets to pay it. But it is not just a collection action. It isn't just a supplement to a judgment. It is, in fact, an attempt to find personal liability of that entity, and they should have every right, and that would have been piecemeal litigation. We don't generally allow judgment debtors to continue litigating the bona fides of the judgment if we can show that they were in privity with the original debtor, right? No, I don't think so, because I think you have to respect the entities, and the claim that they asserted was very different. They had to prove that there were no assets of the initial partnerships, and therefore, that's the claim. I mean, you have to see. But the judgment was entered jointly and separately, so that means that it's basically the option of the creditor as to, if it can't get the judgment collected from one of the potential judgment debtors, then it can go after you. Yes, if that initial lawsuit was against both parties, and it wasn't. They got their judgment initially from the partnership, and then they had to sue to say, we have to prove our case. But the law is authorized by operation of law as a partner. Well, no, it doesn't. As your counsel said. It doesn't unless the partnership doesn't have sufficient assets. I think we understand. So that's the point. But in essence, to look at the complaint as a whole, the claim was for breach for foreclosure. It was for breach of relationships that arose by operation of law. We're entitled to have, where you're seeking punitive damages, we requested attorney's fees. We never requested attorney's fees in the complaint under Hawaii statute or under any contract. Let me just ask one question, and then your time is up. This sounds like a silly question, but who exactly are you representing now? Well, I'm representing the appellants in the case. I'm representing, obviously, Kona Enterprises did file an appeal, but I'm representing the third-party defendants. Who? Wayne M. Rogers, I believe. Wayne M. Rogers and Company. Bilal Partners. Wayne Rogers as a. . . I understood that your client was Wayne Rogers. At all. I said and others. And that includes Laura Rogers, William Rogers, Wayne Rogers, who are all the members of Bilal LLC. Thank you very much. Thank both of you for your argument. The case of Kona Enterprises v. Rogers is submitted, and we are in recess until tomorrow. All rise.
judges: Alarcon, Berzon, Tallman